# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

_____

### BAP NO. PR 10-041

_____

### Bankruptcy Case No. 07-04459-BKT

_____

### FUNDACIÓN DR. MANUEL DE LA PILA IGLESIAS, INC.,
#### d/b/a Hospital Dr. Pila,
#### d/b/a Villa Ponce Housing,
#### Debtor.

_____

### CESAR CASTILLO, INC.,
#### Appellant,

#### v.

### FUNDACIÓN DR. MANUEL DE LA PILA IGLESIAS, INC.,
#### Appellee.

_____

### JUDGMENT

_____

This cause came to be heard from the United States Bankruptcy Court for the District of
Puerto Rico. Upon consideration whereof, and in accordance with the Opinion entered of even
date, it is now hereby **ORDERED AND ADJUDGED** that the bankruptcy court's order denying
the Appellant's request for immediate payment of its allowed administrative claim and ruling
that payments would be made in accordance with the confirmed plan is **AFFIRMED**.


FOR THE PANEL:

Dated: March 22, 2011          By:     /s/ Mary P. Sharon
                                       Mary P. Sharon, Clerk

[cc: Hon. Brian K. Tester, and Clerk, U.S. Bankruptcy Court, District of Puerto; and
Daniel Molina-López, Esq., Rafael González-Valiente, Esq., Monsita Lecaroz-Arribas, Esq.]

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT

————————————————

**BAP NO. PR 10-041**

————————————————

**Bankruptcy Case No. 07-04459-BKT**

————————————————

**FUNDACIÓN DR. MANUEL DE LA PILA IGLESIAS, INC.,**
**d/b/a Hospital Dr. Pila,**
**d/b/a Villa Ponce Housing,**
**Debtor.**

————————————————————

**CESAR CASTILLO, INC.,**
**Appellant,**

**v.**

**FUNDACIÓN DR. MANUEL DE LA PILA IGLESIAS, INC.,**
**Appellee.**

————————————————

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Hon. Brian K. Tester, U.S. Bankruptcy Judge)**

————————————————

**Before**
**Hillman, Kornreich, and Bailey,**
**United States Bankruptcy Appellate Panel Judges.**

————————————————

**Daniel Molina López, Esq., on brief for Appellant.**

**Rafael A. González Valiente, Esq., on brief for Appellee.**

————————————————

**March 22, 2011**

————————————————

**Bailey, U.S. Bankruptcy Appellate Panel Judge.**

Cesar Castillo, Inc. ("Castillo"), appeals from the bankruptcy court's June 16, 2010 order (the "Order") denying its request for immediate payment of its allowed administrative claim and ruling that payments would be made in accordance with the confirmed plan. For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

Fundación Dr. Manuel de la Pila Iglesias, Inc. (the "Debtor"), filed a chapter 11 petition on August 9, 2007 (the "Petition Date"). From the Petition Date through the effective date of its confirmed chapter 11 plan, a liquidating plan, the Debtor operated its business and managed its affairs as a debtor-in-possession pursuant to §§ 1107 and 1108.[1]  On August 31, 2007 and pursuant to § 1102, the U.S. Trustee appointed an official committee of unsecured creditors (the "Creditors Committee"). Castillo, one of the Debtor's largest trade creditors, was a member of the Creditors Committee.

The Debtor's main business was the operation of a primary care hospital known as Hospital Dr. Pila (the "Hospital") located in Ponce, Puerto Rico, which provided services mainly to indigent and low-income patients. To continue its operations and properly reorganize, the Debtor needed to purchase large amounts of prescription drugs and over-the-counter products for its patient services.

After the Debtor's bankruptcy filing, Castillo continued to supply pharmaceutical products to the Debtor. Castillo claims that it entered into a postpetition credit agreement with

---

[1]  Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. §§ 101, et seq.

2

the Debtor under which Castillo would continue to sell goods to the Debtor and that the Debtor

would pay for those goods within 30 days of receipt rather than by cash on delivery.  The parties

did not seek court approval of the alleged postpetition credit agreement.  Castillo contends that

from the Petition Date to March 23, 2010, the Debtor paid each of Castillo's postpetition

invoices by the due date set forth in the invoice.

After a protracted negotiation with creditors, the Debtor and the Creditors Committee

jointly filed, in December 2009, an amended plan of reorganization ("Plan") and a disclosure

statement ("Disclosure Statement") with respect thereto.  The Plan provided for the liquidation

of the Debtor's assets.  The proposed liquidation included the sale of the Hospital, but the Plan

did not determine the precise manner in which the Hospital would be sold - not the price, the

buyer, the time, or even the manner of sale - or even that it would necessarily be sold at all, as

the Plan reserved to the Debtor the option of converting to chapter 7 if no satisfactory sale could

be achieved.  The Plan, however, did commit the Debtor to pursuing several outlined sale

options[2] and specified that consummation of the first and preferred option would occur no sooner

than 60 days after confirmation of the Plan.  Pending consummation of the sale, the Plan

contemplated that the Debtor would continue to operate the Hospital as a going concern, at least

until the effective date of the Plan.  The effective date of the Plan was defined as the 30th day

after the confirmation order becomes a "Final Order"; and by definition, the Confirmation Order

---

[2]  Under the Plan, the Debtor would first attempt to complete a sale of the Hospital to an entity
known as Metro Pavia Health System, Inc..  If that sale could not be consummated, then the Debtor would
attempt to sell to a second suitor, Servicios de Salud Episcopales, Inc. ("Servicios"); and if a sale to
Servicios could not be consummated, then the Debtor would proceed with a "lease and purchase
proposal," also with Servicios, involving a two-year lease with an option to purchase.  If this did not
result in a sale, the Debtor would attempt to sell the Hospital through a public sale.  Finally, if the public
sale did not produce a successful bidder, the Debtor and Creditors Committee would confer about other
sale options, with the Debtor reserving the further option of conversion of the case to one under chapter 7.

would become a Final Order "when the time has expired within which a proceeding for review

(whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy

Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding

having been commenced."

With respect to administrative expense claims, the Plan stated:

> [s]ubject to the allowance procedures herein, unless otherwise
> agreed by the holder of an Allowed Administrative Expense Claim
> (in which event such other agreement shall govern), each holder of
> an Allowed Administrative Expense Claim other than Fee Claims,
> shall receive on the Distribution Date or, if later, on the 30th
> (thirtieth) Business Day after such claim becomes Allowed, Cash
> in an amount equal to such Allowed Administrative Expense
> Claim.

"Distribution Date" was, "as to each claim entitled to a Distribution, the later to occur of (i) the

Effective Date or (ii) thirty (30) calendar days after the date on which the Claim becomes an

Allowed Claim."  The Plan also identified the funds from which administrative claims would be

paid:  they would be paid from the funds generated by the sale of the Hospital, from other funds

deposited in an escrow account for the benefit of creditors, such as from liquidation of accounts

receivable, and from the net proceeds of a litigation trust.  The Plan promised the same

treatment—payment in full from the same sources of funds—to priority tax claims and other

priority claims, but, except with respect to distributions from the litigation trust, the Plan does

not appear to have specified the priority in which these three types of claims would be paid if the

sale proceeds and other sources of funding proved insufficient to pay them all in full.[3]  The Plan

does not create levels of priority among administrative claims.[4]

Castillo voted in favor of the Plan.  After notice and a hearing held on February 9, 2010,

the bankruptcy court, on February 17, 2010, entered an order confirming the Plan.  Pursuant to

the Plan, the confirmation order became a Final Order on March 3, 2010, and the effective date

of the Plan was April 2, 2010.

After confirmation of the Plan and continuing after its effective date into May 2010, the

Debtor continued to purchase goods from Castillo.  However, Castillo states that in May 2010,

the Debtor informed Castillo that it would not pay invoices received during the months of

March, April, and May 2010 according to the 30-day terms set forth in the invoices; rather,

payment of these invoices would be made by the Plan Administrator pursuant to the terms of the

confirmed Plan.

On June 10, 2010, Castillo filed a motion requesting an order allowing an administrative

claim for products sold on credit from March 23, 2010 to May 12, 2010 in the amount of

$329,795.04 and directing the Debtor to pay that amount immediately.  Castillo argued that

immediate payment was required because (i) the goods were purchased under a contractual

---

[3]  The Disclosure Statement indicated that the Plan proposed to pay claims in the order of their priority under the Bankruptcy Code.  Disclosure Statement, p. 11 ("From the proceeds of the sale of the Hospital and at the end of a payment plan period contemplated in the offer, creditors will be paid in accordance with the Code.").  The Plan itself includes no such language.

[4]  The Plan does recognize a category of claims known as Post-Effective Date Consummation Expenses, defined as "the sum of these reasonable and necessary expenses of the Plan Administrator incurred after the Effective Date that are necessarily incidental to implementation of the Plan, in an amount to be determined at the Confirmation Hearing."  Castillo does not argue that its claim is such an Expense.  These are to be paid by the Plan Administrator from an Operating Account.  The Plan does not indicate how the Operating Account is to be funded and appears to be silent as to the relative priority of Post-Effective Date Consummation Expenses and administrative expense claims.

agreement to pay within 30 days of delivery, (ii) the Debtor did not prior to May 2010 indicate to Castillo that it would not abide by the 30-day credit terms, and (iii) the Plan and Disclosure Statement contained no provision alerting Castillo that its credit terms would be altered after confirmation of the Plan.  In its response to Castillo's motion, the Debtor did not dispute that Castillo was entitled to an administrative claim in the amount requested, but the Debtor objected to immediate payment, arguing that the claim should be paid with all other administrative claims when the funds to do so became available.  In support of its opposition to immediate payment, the Debtor argued (i) that Castillo's administrative claim had no priority over any other, no postpetition credit agreement with Castillo having been filed with or approved by the court, (ii) that the confirmed Plan provided for payment of administrative claims in the order prescribed by the Bankruptcy Code, meaning that Castillo's administrative claim would be paid with all other administrative claims when the funds to do so became available, and (iii) that Castillo was aware of the risks involved in providing credit to a debtor in bankruptcy and of the treatment it would eventually receive as part of that process.

On June 16, 2010, the bankruptcy court, without a hearing, entered an order allowing Castillo's administrative claim but also directing that "payment will be in accordance with the confirmed plan payment schedules."  Both parties construe this order as requiring that Castillo's claim be paid on a pro rata basis with all other administrative claims as and when distribution is required to be made on those claims; we concur in that construction.  The court issued no findings, rulings, or memorandum of decision in support of this order.  Castillo appealed from that part of the order that denied immediate payment of its administrative claim.

On appeal, Castillo argues, first, that as a simple matter of contract law, the Debtor must pay Castillo's invoices in accordance with the 30-day payment term on which the parties agreed, even where the timing of payment would effectively give Castillo's claim priority over similarly-situated administrative claims.  Second, Castillo argues that the Debtor has acted in bad faith by ordering supplies for which it did not intend to pay within the 30 days required by each invoice, especially where, the Debtor contends, the Disclosure Statement and Plan did not put Castillo on notice of any change in the parties' agreement.  In response to these arguments, the Debtor simply reiterates the arguments it made below.

At oral argument, Castillo advanced an argument that it had not advanced either in the bankruptcy court or in its brief on appeal:  that the Plan itself included an exception to the treatment for administrative claims, under which, if the Debtor and an administrative creditor agreed on a different treatment than that prescribed by the Plan, the agreed terms would govern, and therefore the 30-day agreed payment term governs and requires immediate payment.  Also at oral argument, the Debtor reported that, in accordance with the Plan, the Debtor in fact sold the Hospital in June 2010 and that, in accordance with the terms of the sale, the buyer paid a down payment at the closing and will pay the balance of the sale price by deferred payments over five years.  The Debtor further represented that the funds presently in the possession of the Debtor were, in part, subject to secured claims of third parties and that the balance was insufficient to pay administrative claims in full.  The Debtor added that, until the purchase payments for the Hospital are complete, it will not be clear that the liquidation will yield sufficient funds to pay administrative claims in full.  The Debtor also alleged that a number of other administrative

claimants had agreements with the Debtor similar to Castillo's, for payment in full within 30 days.

## JURISDICTION

Before addressing the merits of an appeal, the Panel must determine that it has jurisdiction, even if the issue is not raised by the litigants.  See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.), 226 B.R. 724 (B.A.P. 1st Cir. 1998).  The Panel has jurisdiction to hear appeals (1) from final judgments, orders, and decrees and (2) with leave of court, from certain interlocutory orders.  28 U.S.C. § 158(a); Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 645 (B.A.P. 1st Cir. 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," id. at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits."  Id. (quoting In re American Colonial Broad. Corp., 758 F.2d 794, 801 (1st Cir. 1985)).  An order allowing a claim is final where all aspects of the claim have been determined.  See Smith v. Pritchett (In re Smith), 398 B.R. 715, 720 (B.A.P. 1st Cir. 2008), aff'd, 586 F.3d 69 (1st Cir. 2009); Orsini Santos v. Lugo Mender (In re Orsini Santos), 349 B.R. 762, 768 (B.A.P. 1st Cir. 2006); see also Perry v. First Citizens Fed. Credit Union (In re Perry), 391 F.3d 282, 285 (1st Cir. 2004).

## STANDARD OF REVIEW

Appellate courts generally apply the clearly erroneous standard to findings of fact and de novo review to conclusions of law.  See Lessard v. Wilton-Lyndeborough Coop. School Dist., 592 F.3d 267, 269 (1st Cir. 2010).  The Panel reviews a bankruptcy court's decision to allow a

claim for abuse of discretion.  See In re Orsini Santos, 349 B.R. at 768 (citing In re Perry, 391

F.3d at 284).

## DISCUSSION

Castillo argues that the bankruptcy court erred in denying its request for immediate

payment of its allowed administrative claim because its postpetition credit agreement provided

that the Debtor would submit payment within 30 days of receiving the goods, and the Debtor was

not entitled to alter those terms without notifying Castillo of its intention to do so.  Castillo's

argument fails for two reasons:  first, upon confirmation of a plan of reorganization, the plan

governs the treatment of allowed administrative claims, and the Plan here gives no priority to

Castillo's claim over other administrative claims; and second, the approved Disclosure Statement

and confirmed Plan provided adequate information and notice as to the treatment of

administrative claims.

As a preliminary matter, we note that the only matter before us is denial of the request for

immediate payment and not also Castillo's request for allowance of its claim as an administrative

expense.  Despite the fact that a substantial portion of its claim arose not only after the Plan's

confirmation but also after its effective date, Castillo moved for allowance of its entire claim as

an administrative expense.  The Debtor did not object to that treatment, the court allowed the

claim as an administrative expense, and no appeal has been taken from that order.  We therefore

accept without deciding that the claim in its entirety is administrative in character.  In doing so,

we recognize that, as an administrative claim, this one is at best atypical.[5]  Additionally, we

_____

[5]  See, e.g., In re Pauling Auto Supply, Inc., 158 B.R. 789 (Bankr. N.D. Iowa 1993) (unless the
plan provides for the continuation of the estate after confirmation, a postconfirmation creditor is unable to
obtain administrative status for a postconfirmation claim because there is no estate to preserve).  We are
not asked to determine here whether the claim was properly characterized as administrative and therefore

recognize that the categorization of the claim as administrative will, in large measure, dictate the

outcome of this proceeding, with results that will seem anomalous in comparison to the usual

treatment of postconfirmation claims against a reorganized debtor.

**I.      The Plan Supersedes Castillo's Underlying Agreement with the Debtor
           as to the Treatment of its Administrative Claim.**

Castillo seeks immediate payment of its claim as an administrative expense claim, and

Castillo argues that it is entitled to immediate payment because the agreement between the

parties provided for payment within 30 days of invoicing.  Insofar as Castillo may be arguing

that the timing of payments must, in the first instance, be dictated by the underlying agreement

between the parties and not by the confirmed Plan, we disagree.

As the Bankruptcy Code required, the Plan provided for the payment in full of

administrative expenses.  11 U.S.C. § 1129(a)(9)(A).  The Plan and the order confirming it are

dispositions *in rem*.  Central Virginia Community College v. Katz, 546 U.S. 356, 362 (2006)

("Bankruptcy jurisdiction, at its core, is *in rem*.").  That is, the confirmed Plan is a binding

determination as to all potential claimants of the liquidation and distribution of a *res* comprised

of the property of the Debtor's bankruptcy estate.  Gardner v. New Jersey, 329 U.S. 565, 574

(1947) ("The whole process of proof, allowance, and distribution is, shortly speaking, an

adjudication of interests claimed in a *res.*"); 8 Collier on Bankruptcy, ¶ 1141.02 (Alan N.

Resnick and Henry J. Sommer eds.,16th ed. 2010) ("[A]n order confirming a plan is a judgment

*in rem* in the sense that it is a determination of the rights and liabilities created by the plan,

binding upon all parties in interest, whether or not they have chosen to appear in the case.  In this

---

do not address such related issues as whether the estate continued in existence after confirmation.

sense, the plan is binding on the world, to the extent it touches the debtor, its rights, assets or obligations as of the confirmation date."). This is true of any bankruptcy plan but especially of a liquidating plan. In accordance with this *in rem* nature, upon the Plan's confirmation, it became binding on all concerned parties, including, among others, the Debtor and all creditors. 11 U.S.C. § 1141(a) ("Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor"). As to the treatment of claims it addresses, including administrative expense claims, and the disposition of estate assets to satisfy those claims, the Plan is *res judicata*. Stoll v. Gottlieb, 305 U.S. 165, 170 (1938) (bankruptcy court order confirming reorganization plan entitled to *res judicata* effect); Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978-79 (1st Cir. 1995) (federal preclusion principles apply to bankruptcy court's plan confirmation order); Ortega Calderon v. CitiMortgage, Inc., 437 B.R. 25, 30-31 (D.P.R. 2010) and cases cited ("It has long been settled that an order confirming a plan is to be given *res judicata* effect."); Factors Funding Co. v. Fili (In re Fili), 257 B.R. 370 (B.A.P. 1st Cir. 2001) ("Plan confirmation is a final order, with *res judicata* effect, and is imbued with the strong policy favoring finality.").

As to any claim that is treated by a confirmed plan, the plan essentially substitutes a new claim for the old. Dale C. Eckert Corp. v. Orange Tree Assocs., Ltd. (In re Orange Tree Assocs., Ltd.), 961 F.2d 1445, 1448 (9th Cir. 1992) (confirmation of chapter 11 plan substitutes the obligations imposed by the plan for preconfimation debt); DiBerto v. The Meadows at Marbury, Inc. (In re DiBerto), 171 B.R. 461, 471 (Bankr. D.N.H. 1994) ("Under a confirmed

11

reorganization plan former legal relationships between a debtor and its creditors are extinguished and replaced by new commitments binding in law.").  Except to the extent that a plan provides that the original rights of a creditor are unimpaired, a confirmed plan gives a creditor new rights that replace and supersede the original characteristics of its claim.  In re Henderberg, 108 B.R. 407, 412 (Bankr. N.D.N.Y. 1989) ("[A] confirmed chapter 11 plan defines the creditors' claims and any pre-confirmation rights of the creditors exist only to the extent that they are accounted for in the plan."); Charles Jordan Taub, THE LAW OF BANKRUPTCY, 1098 (2d ed. 2009) ("Upon confirmation, all prior claims and interests against the debtor are replaced by the provisions of the plan.").  A plan is, in effect, a new contract between the debtor and its creditors.  Id.  It dictates the extent, source, priority, manner, and timing of payment on creditors' claims.  In sum, to determine whether Castillo was entitled to immediate payment, we must look in the first instance to the Plan and not to the agreement between the parties.

## II.     The Plan Does Not Preserve the Original Rights of Administrative Claim Holders

At oral argument, Castillo argued for the first time that its agreement with the Debtor should govern because the Plan itself so requires.  Castillo here is relying on an exception in the Plan's treatment of administrative claims:

> *unless otherwise agreed by the holder of an Allowed Administrative Expense Claim (in which event such other agreement shall govern)*, each holder of an Allowed Administrative Expense Claim other than Fee Claims, shall receive on the Distribution Date or, if later, on the 30th (thirtieth) Business Day after such claim becomes Allowed, Cash in an amount equal to such Allowed Administrative Expense Claim.

Plan p. 10 (emphasis added).  Castillo contends that the emphasized language essentially left unimpaired the agreement under which Castillo's administrative claim arose, including the 30-day payment term; by this interpretation of the language in question, any administrative creditor

12

whose claim arose from an agreement would be deemed unimpaired and, after confirmation, would retain in full the rights it enjoyed before confirmation.

Castillo did not make this argument or cite to this language in his motion before the bankruptcy court.  This argument and language are likewise wholly absent from the brief Castillo filed on appeal.  "Absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." Banco Bilbao Vizcaya Argentaria v. Wiscovitch-Rentas (In re Net-Velázquez), 625 F.3d 34, 40 (1st Cir. 2010). Especially where Castillo compounded its error by failing to brief the issue on appeal, we are aware of no extraordinary circumstances warranting relief from this rule.  The argument is therefore deemed waived.

Nor do we see any evident merit to the argument.  Language of the type Castillo here cites is common and generally intended to permit a debtor and a particular creditor, after confirmation, to negotiate more lenient payment terms—lenient, that is, to the debtor—than the treatment dictated by the plan.  We know of no case in which it has been intended or construed as permission for a debtor and a creditor to make an agreement that, without notice to other creditors, effectively elevates the priority of that creditor's claim over that which it holds under the plan.  This would clearly pose issues of due process.

We conclude that the Plan alone, without reference to the underlying agreement between the parties, governs Castillo's right to payment as an administrative creditor.  The bankruptcy

13

judge was therefore correct in ruling that the Plan should govern the timing and priority of payment of Castillo's administrative claim.[6]

## III.    The Disclosure Statement and Plan

Pursuant to § 1125, a debtor is prohibited from soliciting acceptances of a plan until the bankruptcy court approves a disclosure statement containing "adequate information."  The Bankruptcy Code defines adequate information as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).  Whether or not the information provided in the disclosure statement is adequate is determined by the Bankruptcy Code and "is not governed by any otherwise applicable nonbankruptcy law, rule or regulation."  11 U.S.C. § 1125(d); see also Kaufman v. Public Serv. Co. of N.H. (In re Public Serv. Co. of N.H.), 43 F.3d 763, 766 (1st Cir. 1995); In re El Comandante Mgmt. Co., LLC, 359 B.R. 410, 415 (Bankr. D.P.R. 2006).

Castillo argues that the Disclosure Statement did not satisfy this requirement as it did not specifically warn Castillo that its debt would be paid outside the allegedly agreed-upon postpetition credit terms.  Castillo also argues that the Plan failed to "state, warn or alert [it] that Debtor intended to alter or vary the post-petition credit terms agreed with [Castillo].  Nothing in the plan [] provided for the modification of post-petition or post-confirmation credit terms in order to implement it."

---

[6]  Except to the extent that Castillo relies on the exception we have just addressed, we do not understand Castillo to argue that *the Plan* requires immediate payment.  That issue is not before us. Accordingly, we take no position as to when and to what extent the Plan requires that payment be made on Castillo's administrative claim.

This argument has no merit.  First, a plan must provide for the payment of claims in existence as of its confirmation, and a disclosure statement must set forth adequate information about this subject matter.  A disclosure statement need not also supply notice to trade creditors with whom the Debtor anticipates doing business *after confirmation* about the trade terms under which that *postconfirmation business* will be transacted.  Castillo has cited no authority to the contrary, and we are aware of none.

Second, with respect to the treatment of administrative claims, the provisions of the Plan are clear, and the information about that treatment in the Disclosure Statement is adequate.  The Plan and Disclosure Statement both state, repeatedly, that administrative claims will be paid at least in part from proceeds from the liquidation of the Hospital and of accounts receivable and other assets.  And neither gives cause to understand that Castillo, or any subclass of administrative claimants to which Castillo may belong, is entitled to payment sooner than, or with priority over, other administrative creditors.  Moreover, while the Plan promises payment of each administrative claim on the later to occur of the effective date or 30 days after the date on which the claim becomes an allowed claim, both the Plan and the Disclosure Statement also make abundantly clear that the liquidation of the Hospital and other assets, from which payment was to be made, would not occur by the effective date, might not occur for years, and, at least as to the Hospital, was not certain to occur at all.  Castillo cites no ambiguity or lack of disclosure in the relevant provisions.  We find no inadequacy in the Disclosure Statement.

## IV.    Bad Faith

Castillo's last argument is that it was error to deny immediate payment where Castillo had alleged that the Debtor acted in bad faith by ordering products from Castillo without intent

to honor their longstanding agreement to pay in full within 30 days and without notifying
Castillo of any change in that arrangement.  The bankruptcy judge made no findings of fact; for
present purposes, we therefore accept this allegation as true.  Still the argument is of no avail.
Whatever the basis of its administrative claim, be it a simple breach of contract or a breach
committed in bad faith, the resulting claim is still an administrative claim, and the treatment of
administrative claims is governed by the confirmed Plan.  This makes it not merely a two-party
dispute between a debtor and its creditor but an *in rem* claim against the pool of assets whose
distribution among numerous creditors is governed by the Plan.  Castillo has not pointed to
language in the Plan by virtue of which the claim's origination in bad faith would entitle that
claim to immediate payment or priority over other administrative claims.  Nor are we aware of
any such language.

## CONCLUSION

For the reasons set forth above, we conclude that the bankruptcy court correctly denied
Castillo's request for immediate payment of its administrative claim and accordingly **AFFIRM.**

16

### General Docket
### United States Bankruptcy Appellate Panel

| | |
|---|---|
| **Bankruptcy Appellate Panel Docket #:** 10-41<br>In re: Fundacion Dr. Manuel De La Pil, et al v. Cesar Castillo, Inc.<br>**Appeal From:** Bankruptcy Court - Ponce Puerto Rico<br>**Fee Status:** filing fee paid | **Docketed:** 07/15/2010<br>**Termed:** 03/22/2011 |

**Case Type Information:**
  1) bankruptcy appellate panel
  2) Chapter 11 Business
  3) nothing

**Originating Court Information:**
  **District:** 0104-2 : 07-04459-BKT
  **Ordering Judge:** Brian K. Tester
  **Date Filed:** 08/09/2007

**Prior Cases:**
  None

**Current Cases:**
  None

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY OF
THE ORIGINAL ON FILE IN MY
OFFICE AND IN MY LEGAL CUSTODY
UNITED STATES BANKRUPTCY
APPELLATE PANEL
FOR THE FIRST CIRCUIT
BOSTON, MA
By: _____ Date: 3/22/11

---

In re: FUNDACION DR. MANUEL DE LA
PILA IGLESIAS, INC., a/k/a Hospital Dr. Pila,
a/k/a Villa Ponce Housing
          Debtor

------------------------------

CESAR CASTILLO, INC.
          Creditor - Appellant

Daniel Molina-Lopez
Direct: 787-753-7910
[COR NTC Retained]
Firm: 787.753.7910
P.O. Box 191732
San Juan, PR 00919-1732

v.

FUNDACION DR. MANUEL DE LA PILA
IGLESIAS, INC.
          Debtor - Appellee

Rafael Antonio Gonzalez-Valiente, Counsel
Direct: 787-724-0230
[COR NTC Retained]
Latimer, Biaggi, Rachid & Godreau, LLP
Firstbank Building, Stop 23, Suite 1205
1519 Ponce de Leon Ave.
Santurce, PR 00909

------------------------------

Monsita Lecaroz-Arribas
[NTC Government - Other]
Office of the US Trustee
San Juan
Ste. 301
500 Tanca Street
San Juan, PR 00901-1922

In re: FUNDACION DR. MANUEL DE LA PILA IGLESIAS, INC., a/k/a Hospital Dr. Pila, a/k/a Villa Ponce Housing

        Debtor

-----------------------------

CESAR CASTILLO, INC.

        Creditor - Appellant

v.

FUNDACION DR. MANUEL DE LA PILA IGLESIAS, INC.

        Debtor - Appellee

| Date | | Description |
|------|---|-------------|
| 07/15/2010 | ☐ | Received Notice of Appeal filed at U.S. Bankruptcy Court, District of Puerto Rico (Ponce) on 06/30/2010, transmittal form, FILED. [10-41] |
| 07/21/2010 | ☐ | OPENING LETTER: Notice to Clerk, U.S. Bankruptcy Court, District of Puerto Rico (Ponce) and all parties RE: BAP No. PR 10-041 assigned. [10-41] |
| 07/21/2010 | ☐ | Complete Certificate of readiness received from U.S. Bankruptcy Court, District of Puerto Rico. |
| 07/23/2010 | | Certificate of Readiness docketed. [10-41] |
| 07/23/2010 | ☐ | BRIEFING ORDER ENTERED: Brief due 08/06/2010 for Appellant Cesar Castillo, Inc.. Appellee's brief due 08/20/2010 for Appellee Fundacion Dr. Manuel De La Pila Iglesias, Inc.. Reply brief due 09/03/2010 for Appellant Cesar Castillo, Inc. [10-41] |
| 08/06/2010 | ☐ | Brief filed by Appellant Cesar Castillo, Inc. [10-41] |
| 08/06/2010 | ☐ | Appellant Cesar Castillo, Inc. appendix filed. [10-41] |
| 08/20/2010 | ☐ | Brief filed by Appellee Fundacion Dr. Manuel De La Pila Iglesias, Inc. [10-41] |
| 08/20/2010 | ☐ | ENTERED IN ERROR: Appellee Fundacion Dr. Manuel De La Pila Iglesias, Inc. appendix filed. [10-41] Appellee is not filing an appendix.--[Edited 08/23/2010 by aw] |

| 10/07/2010 | ☐ | ORDER Regarding Relocation. Order notifying CMECF attorney filers of BAP's new location as of 10/12/10. |
| 10/21/2010 | | Panel assigned [10-41] |
| 10/22/2010 | ☐ | ORAL ARGUMENT SCHEDULING ORDER: This case is scheduled for oral argument at 9:30 a.m., Tuesday, 11/30/2010 at 09:30 am at the Toledo U.S. Post Office and Court House, San Juan, PR. |
| 10/22/2010 | ☐ | Notice of Oral Argument. Oral Argument Set for 9:30 a.m., 11/30/2010, San Juan, PR. Response to notice deadline is 11/9/10. |
| 11/01/2010 | ☐ | Confirmation of Oral Argument received from Mr. Daniel Molina-Lopez for Appellant Cesar Castillo, Inc.. He will be appearing to argue the case. [10-41] |
| 11/02/2010 | ☐ | Confirmation of Oral Argument received from Mr. Rafael Antonio Gonzalez-Valiente for Appellee Fundacion Dr. Manuel De La Pila Iglesias, Inc. He will be appearing to argue the case. [10-41] |
| 11/19/2010 | ☐ | Notice of November 30, 2010 Oral Argument Schedule. [10-41] |
| 11/30/2010 | | HILLMAN, KORNREICH and BAILEY U.S. Bankruptcy Appellate Panel Judges. APPEAL ARGUED AND SUBMITTED THIS DAY. [10-41] |
| 03/22/2011 | ☐ | HILLMAN, KORNREICH and BAILEY, U.S. Bankruptcy Appellate Panel Judges: Opinion issued. Affirmed. Unpublished. Bailey authoring Judge. [10-41] |
| 03/22/2011 | ☐ | HILLMAN, KORNREICH, and BAILEY, U.S. Bankruptcy Appellate Panel Judges: JUDGMENT FILED AND ENTERED. AFFIRMED. [10-41] |

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

## TRANSMITTAL FORM

TO:   Celestino Matta Mendez, Clerk
      U.S. Bankruptcy Court, District of Puerto Rico
      Luis A. Ferré US Courthouse & PO Bldg
      93 Atocha St., Second Floor
      Ponce, PR 00730

| |
|---|
| Case Name:  Fundacion Dr. Manuel De La Pila Iglesias, Inc. |
| BAP Case No.: PR 10-041 |
| Bankruptcy Case No.:  07-04459-BKT |
| Adversary No.: N/A |
| Bankruptcy Judge:  HON. BRIAN K. TESTER |
| |

TRANSMITTED HEREWITH ARE THE FOLLOWING DOCUMENTS:

[  ]   BAP Mandate
[  ]   Mandate of United States Court of Appeals
[  ]   Bankruptcy Court Record
[  ]   Bankruptcy Court Exhibits/Transcript
[X]   BAP Opinion issued March 22, 2011
[X]   BAP Judgment entered March 22, 2011
[  ]   BAP Order
[  ]   BAP Opening Letter
[X]   BAP Docket(s)
[  ]   Other:

COMMENTS:

DATED: March 22, 2011                    Mary P. Sharon, Clerk

                                 By:    /s/  Ann M. Williams
                                        Ann M. Williams, Case Manager